IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 16, 2019

## LEE D. WATTS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**No. 63CC1-2013-CR-712     Ross H. Hicks, Judge**

_____

### No. M2018-01379-CCA-R3-PC

_____

The petitioner, Lee D. Watts, appeals the denial of his petition for post-conviction relief, which petition challenged his 2015 convictions of first degree felony murder and especially aggravated robbery, alleging that he was deprived of the effective assistance of counsel. Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Lee D. Watts.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Arthur Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

A Montgomery County Circuit Court jury convicted the petitioner of alternative counts of the first degree felony murder and one count of the especially aggravated robbery of Ethel Adamson, the petitioner's mother. *State v. Lee Dewane Watts*, No. M2015-02404-CCA-R3-CD, slip op. at 7 (Tenn. Crim. App., Nashville, Jan. 19, 2017), *perm. app. denied* (Tenn. May 18, 2017). After a sentencing hearing, the trial court merged the first degree felony murder convictions and imposed a sentence of life imprisonment. The court ordered the petitioner to serve a 25-year especially aggravated robbery sentence consecutively to the life sentence for a total effective sentence of life plus 25 years' incarceration. *Id.*, slip op. at 7-8. On direct appeal, this court affirmed the petitioner's convictions and sentence. *Id.*, slip op. at 12, 15.

This court summarized the evidence at trial as follows:

Relevant to the victim's murder, the evidence . . . shows that on the night the victim was beaten, the [petitioner] came and went from her apartment multiple times to obtain money to buy drugs. Several witnesses smoking crack cocaine with the [petitioner] that night testified that he left their group and said he was going to his mother's house for more money. The [petitioner] and the victim were the only two people with access to her apartment and there were no signs of forced entry. The [petitioner] admitted to being at the victim's apartment sometime that night and eyewitnesses including the victim's neighbor saw the [petitioner] leaving the victim's apartment a short time before the victim was found by police and paramedics with serious injuries. The victim suffered blunt force trauma to her head, which caused her to lose brain function and die soon after. A hammer was found on the floor of her apartment, and medical experts testified that her injuries were consistent with being inflicted by a hammer. The victim's blood was found on the hammer, and the [petitioner's] blood was found on a shirt he was seen wearing the night before and the morning after the victim was beaten. The victim had several wounds classified by the medical examiner as "defensive." When questioned by police, the [petitioner] admitted to hitting the victim with the hammer multiple times, and he gave a written statement asking God for forgiveness.

Relevant to the robbery, witnesses testified that the [petitioner] left the group multiple times that night, saying he was going to the victim's apartment, and each time he returned with more money and purchased more drugs. In the past and in front of neighbors, the [petitioner] had discussed with the victim the fact that the victim had received a benefit check that the [petitioner] wanted the victim to share with him. A letter from the VA confirmed that the victim had received benefits of over $6,000. The [petitioner] also discussed with the victim her life insurance policy, and asked the victim for money several times in front of her neighbor. On the morning the victim was found and while she was

being treated by paramedics, the [petitioner] asked the victim's neighbor for money as well. A hammer was found inside the victim's apartment with her blood on it, and she suffered life threatening injuries consistent with being beaten in the head by a hammer.

*Id.*, slip op. at 11.

On June 21, 2017, the petitioner filed a timely pro se petition for post-conviction relief alleging that his confession was coerced, that his privilege against self-incrimination was violated, that the State failed to disclose certain evidence, that the composition of the jury was unconstitutional, that his trial counsel performed deficiently, and that newly discovered evidence existed. After the appointment of counsel, the petitioner filed an amended petition for post-conviction relief, reasserting the ineffective assistance of counsel claim and incorporating the pro se petition. Specifically, the petitioner alleged that trial counsel performed deficiently by failing to object to the admission of a recorded 9-1-1 call, failing to investigate the case properly, and failing to object to improper argument by the State.

At the April 13, 2018 evidentiary hearing, the petitioner testified that he was appointed an attorney at the inception of his case, but he moved for the substitution of counsel after two or three months and was appointed trial counsel, who handled the petitioner's case through appeal. The petitioner stated that trial counsel visited him "[e]very weekend" for approximately "[t]wo or three hours" while preparing for trial. The petitioner gave trial counsel the names of Victoria Hodges, Billy Wall, and James Brigham as potential witnesses, but, although trial counsel interviewed those individuals, he did not call any witnesses at trial. Although the petitioner acknowledged that none of those individuals were present at the crime scene, he contended that they would have testified that he would not have committed the offenses against his mother. The petitioner acknowledged that Ms. Hodges and Mr. Wall did not have information that would have been helpful to his case but later stated that, in reviewing discovery materials, he learned that Ms. Hodges had told police that the petitioner "was being set up" and that he had "never showed a violent side of him." The petitioner stated that, had trial counsel called these witnesses at trial, he would have achieved a different outcome.

The petitioner testified further that he told trial counsel that, during his interview with Clarksville Police Department officers, he had said, "I would like to stop with the questioning, I need some legal guidance. I would like to talk to my pastor for some legal advice" but that the detective said "[Y]our preacher is not a lawyer. He can't help you now." The petitioner contended that after that exchange, the detective "just kept

on pushing" him in the interview. The petitioner stated that he made no statement regarding hurting the victim or knowing who had done so until after he asked to speak to his pastor for legal advice, after which time he confessed to the crimes. The petitioner explained that he "kept denying it over and over and over again" during the interview but, after three-and-a-half hours and after asking to speak to his pastor, he "told [the detective] everything that he said to me" "basically repeat[ing] what he said." The petitioner was unaware whether trial counsel looked into the matter and could not recall whether trial counsel filed a motion to suppress his confession but stated that trial counsel did not object at trial to the playing of the recorded interview. The petitioner contended that, had trial counsel moved to suppress his confession, the outcome of his trial "would have changed dramatically."

Trial counsel testified that he spoke with Ms. Hodges "a lot" and determined that her testimony would not have been helpful at trial because "[s]he just didn't have anything to offer to overcome the confession." He also spoke with other potential witnesses but could not recall specifics of the conversations. Trial counsel contended that he watched the petitioner's recorded interview "many, many times because it was the absolute biggest problem of his case," and he considered the recording "from every angle" but concluded that the petitioner's request to speak to his pastor for legal advice "wasn't even close" to satisfying the requirement that the petitioner invoke his right to counsel with "absolute clearness." Although he did not believe there was a basis for suppressing the recording, he stated that he cross-examined the police officers about the interview "extensively." Trial counsel stated that he argued to the jury that the petitioner's confession was "somewhat coerced" because the detective continually crowded the petitioner during the four-and-a-half hour interview, "pushing forward towards him." He stated that he "[e]xtensively discussed with the petitioner whether the petitioner should testify but explained that he was doubtful that the petitioner could have presented the interview as coercive had he testified. He believed that, had the petitioner's confession not been played for the jury, the case would have turned out differently because the State "didn't have anything else."

Trial counsel testified that the defense theory at trial was that a drug dealer committed the crime in retaliation for the petitioner's no longer purchasing drugs from him. He acknowledged that the petitioner had an extensive criminal history of theft-based offenses and said that he filed a motion to prevent disclosure of those prior offenses. Trial counsel contended that, despite his efforts, the petitioner's confession was "impossible to overcome at trial."

On cross-examination, trial counsel testified that he "had extensive meetings" with the petitioner and had a phone line set up on which the petitioner could

contact him. Although he could not recall exact conversations with Ms. Hodges, trial counsel reiterated that she did not have any helpful information to offer. He recalled that only a portion of the petitioner's recorded interview was played for the jury. Trial counsel explained that he did not move to suppress the recording of the petitioner's 9-1-1 call because he "believed it was admissible" under the Tennessee Rules of Evidence. He stated that the trial court denied his motion to exclude the petitioner's prior criminal history, which decision he appealed. He acknowledged that this court denied review of the issue because he failed to submit a sufficient record for review. He contended, however, that even if the motion had been granted, and the petitioner had decided to testify, the "emotional . . . details that [the petitioner] goes through" during his recorded confession "would have still been insurmountable."

At the close of the hearing, the post-conviction court took the matter under advisement. In its June 21, 2018 written order denying relief, the post-conviction court found that the petitioner failed to establish any basis on which the recorded 9-1-1 call could have been suppressed. Furthermore, the court found that trial counsel did not perform deficiently by failing to move to suppress the recorded interview because the petitioner did not clearly invoke the right to counsel, and such a motion would not have been granted. As to the petitioner's assertion that trial counsel was ineffective for failing to investigate or call certain witnesses at trial, the post-conviction court denied relief because the petitioner failed to present these witnesses at the evidentiary hearing. The post-conviction court found all other issues waived for failure to present proof.

The petitioner filed an untimely notice of appeal; however, this court waived the timely filing requirement as permitted by Tennessee Rule of Appellate Procedure 4(a). In this appeal, the petitioner argues that the post-conviction court erred by denying post-conviction relief, reasserting that he was deprived of the effective assistance of counsel by trial counsel's failing to move to suppress the recorded police interview. The State contends that the petitioner waived this issue by failing to raise it in his pro se or amended post-conviction petition. Alternatively, the State argues that trial counsel's decision to not seek suppression of the statement did not constitute deficient performance.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings

are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

First, we address the State's contention that the petitioner has waived the issue. Post-conviction relief is unavailable for a claim that has been waived for failure "to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." T.C.A. § 40-30-106(g). Instances of ineffective assistance of counsel are deemed to constitute a single rendering of ineffective assistance. *Thompson v. State*, 958 S.W.2d 156, 161 (Tenn. Crim. App. 1997) ("Ineffective assistance of counsel is generally 'a single ground for relief' under the post-

-6-

conviction statute." (citing *Cone v. State*, 927 S.W.2d 579, 581-82 (Tenn. Crim. App. 1995))). Because the petitioner raised a broad claim of ineffective assistance of counsel in his original and amended petitions and, more importantly, specifically raised and presented proof on this specific alleged deficiency at the evidentiary hearing, it is not waived.

Turning to the merits of the petitioner's claim, we conclude that he has failed to prove by clear and convincing evidence sufficient facts to support his claim that trial counsel's representation was deficient. We agree with the post-conviction court that the petitioner's request to speak with his pastor for legal advice was not an unequivocal invocation of his right to counsel. *See Davis v. U.S.*, 512 U.S. 452, 459 (1994) (holding that a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney"); *State v. Climer*, 400 S.W.3d 537, 562 (Tenn. 2013). Here, the petitioner said, "I would like to stop with the questioning, I need some legal guidance. I would like to talk to my pastor for some legal advice." The petitioner's telling the officers that he wished to seek legal advice from his pastor rendered the statement ambiguous. Because the petitioner did not unequivocally invoke his right to counsel, no basis existed to suppress the statement, even if trial counsel had moved to do so. The petitioner has thus failed to show that trial counsel performed deficiently by failing to seek suppression of the statement or that he was prejudiced by trial counsel's conduct.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE